

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BRENDA WALLACE,  §
    PLAINTIFF,  §
       §
VS.  §    CIVIL ACTION NO. 4:13-CV-329-A
       §
CAROLYN COLVIN,  §
ACTING COMMISIONER OF  §
SOCIAL SECURITY,  §
    DEFENDANT.  §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Brenda Wallace ("Wallace") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits

under Title XVI of the Social Security Act ("SSA"). In August 2011, Wallace protectively

applied for social security benefits, alleging that her disability began on August 25, 2011.[1]

---

[1] The ALJ's decision notes that the onset date in both of Wallace's applications was originally February 19, 2010 but that it was amended to August 25, 2011. (Tr. 10, 12; *see* Tr. 30.) However, both the "Application for

(Transcript ("Tr.") 10, 191–98.)  Her applications were denied initially and on reconsideration, and Wallace requested a hearing before an administrative law judge ("ALJ").  (Tr. 10; *see* Tr. 67–72, 76–79, 81–82.)  An ALJ held a hearing on October 25, 2012 and issued a decision on November 29, 2012 that Wallace was not disabled.  (Tr. 10–21; *see* Tr. 26–62)  On April 2, 2013, the Appeals Council denied Wallace's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1–4.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (DIB); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, the Court employs a five-step analysis.  20 C.F.R. §§ 404.1520, 416.920 (2011).  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v.*

---

Disability Insurance Benefits" and "Application for Supplemental Security Income" in the record state August 12, 2011 as the alleged date that Wallace's disability began.  (Tr. 191–98.)

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the claimant has the burden of proof to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at the final step to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUE

In her brief, Wallace presents only one issue to the Court: Whether the ALJ erred in giving proper weight to the medical source statement from Wallace's treating physician, Denise Casper, D.O. ("Dr. Casper").

### IV.   ADMINISTRATIVE RECORD

#### A. **Relevant Treatment History**[2]

##### 1. **Dr. Casper**

Dr. Casper treated Wallace through the Family Clinic in Bridgeport, Texas on at least ten occasions between 2007 and 2012 for a variety of symptoms including, but not limited to, swelling, pain, sore throat, and stiffness. (Tr. 13–14, 285–340, 419–62; *see* Plaintiff's Brief ("Pl.'s Br.") at 4–6.) On June 22, 2011, Dr. Casper saw Wallace for complaints of leg swelling, pain and morning stiffness. (Tr. 13, 285–94.) Upon examination, Dr. Casper reported that Wallace had 1+ pedal edema and that spider veins were present on her legs. (Tr. 13, 292.) Dr. Casper assessed Wallace with leg swelling, diffuse arthralgia, and fatigue. (*Id.*)

In a physical residual functional capacity ("RFC") questionnaire dated May 16, 2012, Dr. Casper opined that Wallace: (1) could occasionally lift and carry up to ten pounds and never carry eleven or more pounds; (2) had the limited ability to push and pull; (3) could sit for three hours in an eight-hour workday; (4) could stand/walk for two hours in an eight-hour workday; (5) would need frequent rest periods during the day; (6) could occasionally bend, squat, climb, reach up, and kneel; and (7) would probably miss four or more days of work a month. (Tr. 14, 416–18.) Dr. Casper noted that Wallace's limitations were due to pain and were made worse by any movement. (Tr. 14, 416.) Dr. Casper reported joint deformity, muscle spasms, and disc

---

[2] The Court will only review the treatment history that is directly relevant to the issue presented by Wallace.

abnormality as objective signs of pain, indicating that there was an MRI to support these findings.[3]  (Tr. 14, 417.)  Additionally, Dr. Casper wrote:

> I have seen Ms. Wallace for years [and] treated her multiple joint pains for years. She has gradually had more pain, stiffness [and] decrease of range [of] motion over the past few years.  She is having increased pain [and] the medications she is taking no longer seem to help with her pain.  I do not believe she is able to work due to her pain.

(Tr. 418; *see* Tr. 14.)

Dr. Casper also performed an examination on May 16, 2012 and reported that Wallace had: (1) 2+ pedal edema; (2) edema to bilateral hands and fingers; (3) decreased range of motion in bilateral shoulder flexion and abduction; (4) pain with range of motion in bilateral shoulder flexion, extension, and abduction, bilateral wrist flexion, extension, ulnar deviation, and radial deviation.  (Tr. 14, 422–24.)  Dr. Casper assessed that Wallace had a bulging cervical disc, joint pain at multiple sites, and diffuse arthralgia.  (*Id.*)

## 2. Frank Flory, M.D. ("Dr. Flory")

Dr. Flory performed a consultative neurology examination of Wallace on November 28, 2011.  (Tr. 13, 342–44.)  Dr. Flory assessed Wallace as having intermittent leg swelling, fatigue, joint pain, and neck and back pain.  (Tr. 344.)  At the end of the examination, Dr. Flory noted that he found no evidence of any real disability affecting her ability to work.  (Tr. 13, 344.)  Dr. Flory's report also indicated that Wallace had: (1) good range of motion in all extremities; (2) no evidence of edema; (3) straight leg raises within normal limits; (4) the ability to walk on heels and toes without problem; (5) no evidence of neuropathy or radicular findings in the upper or lower extremities; and (6) x-ray evidence that the left shoulder was normal.  (Tr. 13, 342–45.)

---

[3] Under objective signs of pain, Dr. Casper marked "other procedures and tests" and wrote "MRI Cspine." (Tr. 417.)  However, the report does not elaborate on the MRI referred to.  (Tr. 415–18.)

Dr. Flory stated that his opinion was based on an interview with Wallace, the provided records, and his physical examination of Wallace. (Tr. 344.)

### 3. Wise Regional Health System

Wallace also sought treatment at Wise Regional Health System on multiple occasions between 2009 and 2012 for complaints of abdominal pain, flank pain, cough, congestion, trouble breathing, and headaches. (Tr. 13, 355–414.) On March 13, 2012, a chest x-ray "was unremarkable" and a CT scan of the abdomen and pelvis revealed no acute findings. (*Id.*)

### 4. Texas Health Harris Methodist Northwest

On September 19, 2012, Wallace sought treatment at Texas Health Harris Methodist Northwest with complaints of back pain. (Tr. 14, 463–80.) Wallace reported that she was prescribed hydrocodone and muscle relaxers but that she tries not to take them because she does not like taking drugs. (*Id.*) Wallace was assessed with back pain and abdominal pain, and records from this visit noted that she had a normal CT scan, normal range of motion, no edema, no tenderness other than on left ankle, and that all other tests were normal. (*Id.*)

### 5. State Agency Medical Consultant ("SAMC")

On December 16, 2011, SAMC James Wright, M.D. ("SAMC Wright") completed a physical RFC assessment based on all of the evidence in the file, including clinical and laboratory findings, symptoms, observations, lay evidence, and reports of daily activities. (Tr. 346–53.) In his assessment, SAMC Wright concluded that Wallace could: (1) occasionally lift or carry no more than twenty pounds; (2) frequently lift or carry no more than ten pounds; (3) stand and/or walk about six hours in an eight-hour workday; (4) sit about six hours in an eight-hour workday; (5) push and/or pull according to the same limitations as lifting and carrying; (6) occasionally climb ramps or stairs; (7) never climb ladders, ropes, or scaffolds; and (8)

frequently balance, stoop, kneel, crouch, or crawl.  (Tr. 347–48.)  Regarding Wallace's alleged symptoms, the SAMC noted that Wallace's alleged limitations were partially supported by the evidence in the record.  (Tr. 351.)

### 6. Charles Murphy, Medical Expert ("Dr. Murphy")

At the hearing on October 25, 2012, Dr. Murphy, testifying as a medical expert after reviewing Wallace's record as a whole, diagnosed Wallace with degenerative disc disease of the cervical spine.  (Tr. 18, 42.)  Dr. Murphy testified that the evidence included: (1) an MRI from November 2009 showing a protrusion at C5-6 with mild forminal narrowing; (2) an MRI from October 2009 showing a probable contusion of the left clavicle and some AC joint degenerative change; (3) an x-ray from December 2011 of the left shoulder that was normal; (4) a normal consultative exam in November 2011 in which Dr. Flory opined that Wallace had good range of motion of all extremities and no joint problems; (5) a couple episodes of edema, in June 2011 and February 2012, but no edema in September 2012; and (6) a hearing test in 2003 showing some hearing loss on the left side and no loss on the right side.  (Tr. 18, 41–47.)  Dr. Murphy opined that Wallace could perform light work[4] with: (1) occasional overhead reaching, (2) occasional bending, stooping, and crouching, (3) no climbing of ladders, ropes or scaffolding; and (4) no crawling.  (Tr. 18, 45.)  In addition, Dr. Murphy stated that he did not think the record provided adequate explanation for the alleged degree of symptoms and joint pain.  (Tr. 46.)

---

[4] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

### B. **ALJ's Decision**

In his November 29, 2012 decision, the ALJ found that Wallace met the disability insured status requirements of the SSA through December 31, 2015. (Tr. 12.) At the first step of the five-step analysis, the ALJ found that Wallace had not engaged in any substantial gainful activity since August 25, 2011, the amended alleged onset date for her disability. (*Id.*) At the second step, he found that Wallace had two severe impairments: lumbar degenerative disc disease and loss of hearing in her left ear. (*Id.*)

At the third step, the ALJ found that Wallace did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 14–15.) As to Wallace's RFC, the ALJ stated, "The claimant retains the physical and mental residual functional capacity to perform light work with occasional overhead reaching and occasional bending, stooping and crouching with no climbing of ladders, ropes or scaffolds or crawling." (Tr. 18; *see* Tr. 15.)[5]

At step four, the ALJ concluded that, based on his RFC assessment and the testimony of a vocational expert, Wallace was unable to perform any of her past relevant work. (Tr. 19.) At the fifth step, the ALJ considered Wallace's age, education, and RFC and found there to be a significant number of jobs in the national economy that Wallace could perform. (Tr. 19–20.) Accordingly, the ALJ concluded that Wallace was not disabled. (Tr. 20.)

---

[5] The Court notes that the ALJ, in an earlier section of his decision, stated that Wallace had the RFC to perform light work except that he must avoid climbing ropes and crawling and perform only "occasional overhead reaching and occasional bending, stooping and [climbing] scaffolds." (Tr. 15.) The reference to Wallace being able to occasionally climb scaffolds is inconsistent with the ALJ's recitation of Wallace's RFC in a later part of his decision in which he states that Wallace could not, *inter alia*, climb scaffolds. (Tr. 18.) Based upon a reading of the entire decision, it is clear that the ALJ's statement that Wallace could occasionally climb scaffolds in the earlier part of the decision was a typographical error and the ALJ meant, as stated later in the decision, to prohibit Wallace from climbing scaffolds.

## V.   DISCUSSION

Wallace claims that the ALJ gave improper weight to the opinions of non-treating physicians over the contradictory and well-supported evidence of Dr. Casper, her treating physician. (Pl.'s Br. at 8.)  Wallace states, in essence, that the ALJ erred by rejecting Dr. Casper's opinion in the RFC questionnaire without performing the required analysis or showing good cause. (Plaintiff's Reply ("Pl.'s Reply") at 1.)  Under these circumstances, Wallace asserts that the ALJ might have reached a different RFC determination had he conducted the required analysis and assigned greater weight to Dr. Casper's opinion. (Pl.'s Reply at 5.)

RFC is what an individual can still do despite her limitations.[6]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[7] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform

---

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

Furthermore, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Because the determination of disability always remains the province of the

ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more

well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In this case, the ALJ, as set forth above, found that Wallace had the RFC to perform light work except that she was limited to occasional overhead reaching, bending, stooping, and crouching, and must avoid climbing ladders, ropes, scaffolding, and crawling. (Tr. 18.) In making this determination, the ALJ considered the medical evidence detailed above. As to such opinions, the ALJ, *inter alia*, stated:

> As for the opinion evidence, the undersigned gives weight to the opinion of the State agency physician expressed in Exhibit 5F to a degree that is only consistent to the assessed residual functional capacity in this decision. The undersigned gives great weight to the opinion of the medical expert, Dr. Murphy, as it is supported by the record as a whole. The undersigned does not give much weight to the treating doctor's opinion expressed in Exhibit 8F. The undersigned recognizes that the record includes such statement, i.e. that the claimant is unable to work. However, the determination of disability is reserved to the Commissioner under 20 CFR §§ 404.1527(e) and 416.927(e) and is unsupported by the objective evidence, including but not limited to the evidence provided by that doctor herself. As a result, conclusory opinions that a claimant cannot work do not merit controlling weight. For these reasons, the undersigned declines to assign any significant weight to it.

(Tr. 18–19 (internal citations omitted).)

The first issue is whether the ALJ was required to address the statutory factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) before rejecting Dr. Casper's opinion. As discussed

above, the ALJ is not required to perform the detailed analysis where there is other reliable medical evidence from a treating or examining physician that controverts the treating specialist's opinion. In this case, the ALJ relied on the following medical evidence in rejecting Dr. Casper's opinion in the RFC questionnaire that Wallace was not capable of performing the full range of light work: (1) the records of Dr. Flory, an *examining* physician; (2) the opinion of Dr. Murphy, a testifying medical expert; (3) the opinion of SAMC Wright contained in the Physical RFC Assessment; and (4) the actual treatment records of Dr. Casper.[8]

Contrary to Wallace's contentions, this is not a case where the ALJ summarily rejected the opinions of the treating physician based solely on the testimony of a non-examining physician. *See Newton*, at 458. Rather, this is a case where there is first-hand medical evidence in the record from an examining physician, Dr. Flory, that controverted the opinions of the treating physician. (Tr. 17; *see* Tr. 341–45.) The record contains Dr. Flory's opinion as an examining physician, as well as various other examination records from Wise Regional Health System and Texas Health Harris Methodist Northwest. Accordingly, the ALJ was not required to perform a detailed analysis under 20 C.F.R. §§ 404.1527(c) and 416.927(c). Because the ALJ found that the evidence and opinions in the record were inconsistent, he was required to weigh all of the evidence together in making a determination of disability. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). The ALJ fully considered the evidence in the record as a whole, which included the opinions of Dr. Casper and other first-hand medical evidence from examining physicians, in making a disability determination. (Tr. 18.) *See, e.g., Magee v. Astrue*, No.1:09-CV-620-HSO-

---

[8] As to the consultative examination with Dr. Flory, the record shows that it was his opinion that there was no evidence of any real disability as far as Wallace's work ability. (Tr. 13; *see* Tr. 344.) As for the opinions of Dr. Murphy and SAMC Wright, both were based on the review of the full record, which includes first-hand medical evidence records from Dr. Casper, Dr. Flory, Wise Regional Health System, and Texas Health Harris Methodist Northwest. (Tr. 18; *see* Tr. 41–47, 346–53.) Finally, Dr. Casper's assessments and diagnoses of Wallace's symptoms were found to lack consistent, objective medical evidence to support the final action. (Tr. 18–19.)

JMR, 2011 WL 1226011, at *6-7, (S.D. Miss. Mar. 29, 2011).  Thus, the ALJ did not err in

failing to perform the detailed analysis, as it was not required.[9]

The second issue is whether the ALJ sufficiently demonstrated good cause for rejecting

the treating physician's opinion.  Wallace contends that the ALJ failed to show good cause as

required by regulation and precedent when he rejected the treating physician's opinions.  (Pl.'s

Reply at 2.)  In addition to arguing that the ALJ neglected to provide *any* good cause for

rejecting Dr. Casper's opinions, Wallace claims that the ALJ failed to provide an appropriately

detailed explanation as to how he weighed those opinions.  (Pl.'s Reply at 4.)

In determining Wallace's RFC, the ALJ declined to give any significant weight to the

treating physician's opinion expressed in the RFC questionnaire.  (Tr. 18–19.)  The ALJ

correctly recognized that he was not bound to accept a treating physician's conclusion as to

disability, since the Commissioner alone makes the legal determination of disability.  (Tr. 19.)

*See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank*, 326 F.3d at 620.  While the ALJ must

never ignore medical source opinions even if the opinion is on an issue reserved for the

---

[9] Even assuming that the ALJ was required to address the statutory factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) before rejecting Dr. Casper's opinion, the Court concludes that the ALJ, at least implicitly, performed such analysis.  As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Wallace and Dr. Casper, the ALJ clearly recognized that Dr. Casper was Wallace's treating physician and was aware of the length of and extent of Dr. Casper's treatment of Wallace.  (Tr. 14, 17–19.)  *See*, 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2).  As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ noted that Dr. Casper's treatment records did not support the limitations stated in the RFC questionnaire, and the opinions in such questionnaire appeared to be based on Wallace's subjective reports, which the ALJ did not find fully credible.  (Tr. 17–19.)  *See* 20 C.F.R. §§ 404.1527(c)(3), (4), (6), 416.927(c)(3), (4), (6).  In addition, the ALJ noted that Dr. Casper's opinions were not supported by other evidence in the record that the ALJ had reviewed and set forth in his decision.  (Tr. 19; *see* Tr. 17–19.)  As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Factor five does not apply here because neither the record, nor either party's brief, indicates Dr. Casper is a specialist of any sort.  Thus, her opinion is entitled to no additional weight under this factor.  Because the ALJ properly considered the treatment records and opinions of Dr. Casper and went through the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) before rejecting Dr. Casper's opinions, the Court concludes that the ALJ did not err.

Commissioner, the ALJ is not required to consider proposed limitations not supported by the record. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A., July 2, 1996); *see Muse*, 925 F.2d at 790.

In this case, the ALJ stated that Dr. Casper's determination of disability was "unsupported by the objective evidence, including but not limited to the evidence provided by that doctor herself." (Tr. 19.) Ultimately, the ALJ found that, because Dr. Casper's opinions were unsupported by clinical or diagnostic objective evidence, they did not merit controlling weight. (Tr. 18–19.) While the ALJ could have been clearer, it is obvious from a reading of the complete ALJ's decision that he rejected Dr. Casper's opinions in the RFC questionnaire based on the other evidence in the record. The ALJ specifically noted Dr. Flory's consultative exam in November 2011, which showed no evidence of real disability, and Wallace's own reports of daily activities. (Tr. 17.) The ALJ also relied heavily on Dr. Murphy's testimony, which interpreted the objective medical evidence in the entire record, as well as the opinion of SAMC Wright. (Tr. 18.) Because the ALJ properly considered the opinions of Dr. Casper and provided good cause for rejecting her opinions, the Court concludes that the ALJ did not err. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 1, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 17, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE